S. PEIRSON v. AMERICAN HARDWARE MUTUAL INSURANCE COM-
PANY.

(Filed 16 April, 1958)

**1. Insurance § 43b—**

There is a distinction between a garage liability policy which does
not specify any particular vehicle insured and an ordinary liability
policy covering loss or damage resulting from the operation of a specified
vehicle, but under a group liability policy it would seem essential that
insurer know the identity of insured so as to determine the nature and
extent of its risks and the premiums to be charged.

**2. Insurance § 13a—**

Where insured declares upon the policy as written without seeking ref-
ormation, the rights of the parties must be determined in accordance
with its terms, and parol evidence is incompetent to vary its terms as to
the parties insured or the risks covered.

**3. Evidence § 5—**

It is a matter of common knowledge in the business and commercial
world and among people at large that the letters "DBA" mean "doing
business as."

**4. Insurance § 43d—**

Where a garage liability policy states that the insured is a partnership,
evidence tending to show that insured in addition to the partnership was
also an individual business of which one of the partners was the sole
proprietor, is properly excluded, since the written policy is conclusively
presumed to express the contract it purports to contain.

**5. Partnership § 1a—**

A partnership is an association of two or more persons to carry on as
co-owners a business for profit. G.S. 59-36.

**6. Insurance § 43b—**

In a suit to recover medical payments under a garage liability policy
naming the insured as "Peirson-Neville Co. and S. Peirson and Co.," a
partnership, it is error for the court to exclude evidence that at the
time of the accident in suit the vehicle was used principally in the busi-
ness of "S. Peirson and Co."

**7. Same—**

In an action to recover medical payments under a garage liability
policy insuring a partnership, submitted under agreement of the parties
that the court should hear the evidence and find the facts, the failure
of the court to make clear and definite findings as to whether the car
was used principally in the separate individual business of one of the
partners, and whether its use on the occasion in suit by such partner
for a purely social purpose, during which his wife was injured in an
accident, was covered by the definition of hazards in the insuring agree-
ments of the policy, requires remand of the cause for further hearing.

**8. Appeal and Error § 21—**

An exception to the judgment presents the question whether the facts found support the judgment.

**9. Appeal and Error § 49—**

Where the facts found by the lower court are insufficient to support its judgment, the cause must be remanded.

BOBBITT, J., concurring in result.
DENNY AND RODMAN, JJ., concur in concurring opinion.

APPEAL by plaintiff from *Paul, J.*, December Term 1957 of HALIFAX.

This is an action on a garage liability policy of insurance to recover the amount of money paid by the plaintiff S. Peirson for necessary medical expenses rendered to his wife, whose injuries were allegedly caused by accident within the policy period, and the payment of which expenses is allegedly covered by the terms of the policy.

When the action came on for trial, counsel for both parties entered into a stipulation, which was written in the minutes of the court, waiving a jury trial, and agreeing that the court find the facts and render judgment thereon. The court, after finding the facts, being of the opinion that in respect of the accident necessitating the medical payments sued for, the plaintiff was not insured within the terms of the policy, and is not entitled to recover, adjudged that the plaintiff recover nothing and that the defendant go hence without day and recover its costs.

From the judgment rendered, plaintiff appeals.

*Dickens & Dickens for plaintiff, appellant.*
*Battle, Winslow & Merrell by J. Brian Scott for defendant, appellee.*

PARKER, J  Prior to the trial of this case the parties stipulated and agreed as follows:

One. The defendant in this case is American Hardware Mutual Insurance Company, formerly Hardware Mutual Insurance Company of Minnesota: the American Hardware Mutual Insurance Company is the proper defendant to this action and before the court, and it has not been prejudiced or misled by reason of any improper identification.

Two. On 10 April 1953 there was outstanding a valid policy of defendant's garage liability insurance providing for the payment of medical bills up to a limit of $2,000.00, which might be incurred within one year from the date of accident. The name of the insured shown in the policy is as follows: "S. Peirson and N. G. Neville DBA: Peirson-Neville Co. and S. Peirson and Co.," and the named insured is "Partnership."

Three. On 10 April 1953 the plaintiff S. Peirson, while driving a Ford

Station Wagon, was involved in an accident in which his wife sustained injuries for the treatment of which he paid $807.90. These expenses were incurred within one year after the accident.

Four. This Ford Station Wagon was the individual property of S. Peirson, and registered in his name. The accident occurred while plaintiff, his wife, and their daughter were leaving a social gathering at Woodlawn Lake Club.

Five. If S. Peirson was an insured under the terms of the policy and within the protection afforded by the policy, in reference to the accident alleged in the complaint, then the defendant is liable to him in the amount of $807.90.

These are the material findings of fact by the Trial Judge:

One. John H. Bland was a salaried employee of defendant with authority to submit written applications of persons desiring insurance, which applications were to be approved or rejected by defendant. While so employed, and about 14 October 1952, Bland took a written application for insurance from S. Peirson for S. Peirson and N. G. Neville, doing business as Peirson-Neville Co. and S. Peirson and Co. The application was mailed to the defendant, who forwarded the policy to Bland, and by him it was delivered to the plaintiff. The policy is in evidence.

Two. At all times relevant to this action S. Peirson was a partner with N. G. Neville, doing business as Peirson-Neville Co.: S. Peirson did business under the name of S. Peirson and Co. These facts were known to Bland, who submitted the application for insurance. There was no evidence that the defendant was informed that S. Peirson individually did business as S. Peirson and Co.

Three. On 10 April 1953 plaintiff, while driving a Ford Station Wagon, was involved in an accident in which his wife sustained injuries for the treatment of which plaintiff paid $807.90 within one year after the accident.

Four. The Ford Station Wagon was the individual property of S. Peirson, and registered in his name. It did not belong to any partnership named as an insured in the policy, and was not being operated for business connected with any such partnership.

Upon these findings of fact the court being of the opinion that, in respect to the medical payments made by plaintiff, he was not insured within the terms of the policy, entered judgment that the plaintiff recover nothing.

While plaintiff has nine assignments of error in the record, he has directed his argument in the brief to only five: the first four assignments of error he discusses in his brief deal with the exclusion of evidence, and the fifth challenges the correctness of the judgment

that the plaintiff recover nothing, for the reason that in respect to the accident to his wife he was not insured within the terms of the policy.

Plaintiff contends that the court erred in excluding the testimony of S. Peirson that the Ford Station Wagon was used primarily and principally in his business known as S. Peirson and Co., and that he was the sole owner of S. Peirson and Co. The defendant objected to the questions that would have elicited this testimony, the objection was sustained, and plaintiff excepted. The answers were written into the record.

Plaintiff excepted to the exclusion of the following testimony by John H. Bland, which was placed in the record: "That at the time this policy was sold to Mr. Peirson he knew Mr. Peirson owned one 1952 Ford Station Wagon; that he knew that this automobile was used primarily and principally in the business of S. Peirson and Co.; that at that time he knew of one 2-ton truck that was used by Mr. S. Peirson in the operation of S. Peirson and Co.; that to his knowledge these automobiles were registered in the name of S. Peirson, and that he knew of no automobiles registered in the name of S. Peirson and Co.; that at the time this policy was written it was being written to cover the operation of two businesses, one business being the partnership of S. Peirson and N. G. Neville, t/a Peirson-Neville Co., and S. Peirson doing business as S. Peirson and Co., being a sole proprietorship owned by S. Peirson; that he knew the 1952 Ford Station Wagon was used primarily in the business of S. Peirson and Co.; that these were the intentions of S. Peirson and John H. Bland, but that he cannot testify that such were the intentions of the defendant company in regard to the policy issued." Plaintiff further excepted to the exclusion of testimony of Bland to the effect that, at the time he went over the provisions of the policy with Peirson, the understanding was that the vehicle registered in the name of S. Peirson was covered.

The policy in the instant case is designated by the defendant as a "National Standard Garage Liability Policy," and does not specify any particular automobile. The distinction between such a policy and an ordinary automobile liability policy is pointed out in *Hardware Mutual Casualty Co. v. Wendlinger,* (4th Cir.) 146 F. 2d 984, as follows: "The policy is called an 'automobile garage liability policy'; and it will be noted that the primary risk assumed by the policy is the liability of the assured for operations of the garage business. Automobiles are included because they are necessary features of the business; but the policy does not specify or describe any particular automobile. In this respect this form of policy is to be sharply differentiated from the ordinary automobile liability policy which covers liability for loss and damage resulting from the operation of a particu-

larly named and described automobile anywhere in the United States and Canada." By reason of the risks in a Garage Liability Insurance Policy, and its purpose, it seems essential that the insurance company know the identity of the insured so as to determine the nature and extent of its risks and the premiums to be charged.

Plaintiff contends that there is an ambiguity in the name of the insured, and that the court erred in not permitting him to show the identity of S. Peirson and Co. as being a sole proprietorship owned by him, and that S. Peirson being the sole owner was a party insured.

Plaintiff's suit is upon the policy as written. *Wright v. Ins. Co.*, 244 N.C. 361, 93 S.E. 2d 438; *Burton v. Ins. Co.*, 198 N.C. 498, 152 S.E. 396. His complaint has no allegation that the contract of insurance should be reformed because of fraud or mutual mistake, and he prays for no such relief.

This Court said in *Floars v. Ins. Co.*, 144 N.C. 232, 56 S.E. 915: "It is also accepted doctrine that when the parties have bargained together touching a contract of insurance, and reached an agreement, and in carrying out, or in the effort to carry out, the agreement a formal written policy is delivered and accepted, the written policy, while it remains unaltered, will constitute the contract between the parties, and all prior parol agreements will be merged in the written instrument; nor will evidence be received of prior parol inducements and assurances to contradict or vary·the written policy while it so stands as embodying·the contract between the parties. Like other written contracts, it may be set aside or corrected for fraud or for mutual mistake; but, until this is done, the written policy is conclusively presumed to express the contract it purports to contain."

In *Graham v. Ins. Co.*, 176 N.C. 313, 97 S.E. 6, this Court said: "The written policy accepted by plaintiff stands as embodying the contract, and the rights of the parties must be determined by its terms until the contract is reformed by the Court."   ·

This Court said in *Burton v. Ins. Co., supra:* "The question, then, is whether a contract of insurance can be reformed and enforced as reformed without appropriate allegation, issue, or prayer for relief. The identical question was considered by this Court in *Britton v. Insurance Co.*, 165 N.C. 149, 80 S.E. 1072. The Court said: 'But the reformation is subject to the same rules of law as applied to all other instruments in writing. It must be alleged and proven that the instrument. sought to be corrected failed to express the real agreement or transaction because of mistake common to both parties, or because of mistake of one party and fraud or inequitable conduct of the other.' "

·Plaintiff offered in evidence the policy of insurance. The policy provides that the declarations are made a part of the policy. In Item 1 of the Declarations of the Policy the "name of insured" is stated "S. Peir-

son and N. G. Neville DBA: Peirson-Neville Co. and S. Peirson and Co." In the same Item is stated "The named insured is partnership," and this the parties stipulated.

It is a matter of general knowledge in the business and commercial world and among people at large that the letters "DBA" are commonly used to mean "doing business as." Webster's New Collegiate Dictionary, (2nd Ed.), d. b. a., page 1000; *S. v. Dowling,* Mo. App., 202 S.W. 2d 580.

The policy states, as the parties stipulated, in plain and unambiguous words that "The named insured is partnership." This the plaintiff, without appropriate allegation in his complaint and prayer for relief, seeks to alter and change and add words to by reforming it to read "The named insured is partnership," and S. Peirson, or individual, or a word or words of similar import.

*American Mut. Liability Ins. Co. v. Condon,* 280 Mass. 517, 183 N.E. 106, was a suit in equity wherein the plaintiff, an insurance company, sought from three defendants, William F., David, and James Condon, alleged to be doing business under the firm name of W. F. Condon and Sons Company, an accounting for premiums due under a policy of automobile liability insurance. Under the heading Declarations in the policy, in Item 1 thereof the "name of insured" is stated as "W. F. Condon and Sons Company," and in Item 3 it is stated that the "insured is corporation." From a final decree adjudging William F. Condon to be indebted to the plaintiff in the sum of $329.85, with interest, and ordering execution to issue, he appealed. He contended, among other things, that there was no contract of insurance binding him because the policy referred to the insured as a corporation. In affirming the final decree the court said in part: "The statement in the policy that the insured is a corporation did not preclude a finding upon evidence that the defendant under the name in which he did business was the insured named in the policy. It was permissible for the plaintiff to show that the erroneous description of W. F. Condon and Sons Company as a corporation was inserted in the policy by mistake, that the parties were not mistaken as to the identity and character of the insured, and that the defendant as an individual doing business under that name was in fact the party making the contract of insurance and intended by both parties to be insured under the policy."

In Webster's New Collegiate Dictionary, (2nd Ed.), partnership is defined as "the relation existing between two or more competent persons who have contracted to join in business and share the proceeds." G.S. 59-36, under the Article "Uniform Partnership Act." defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit."

As plaintiff's suit is upon the policy as written, which states that

"the named insured is partnership," the written policy is conclusively presumed to express the contract it purports to contain, and the court properly rejected the testimony of S. Peirson and John H. Bland tending to show that S. Peirson and Co. is not a partnership, but is S. Peirson doing business under the trade name of S. Peirson and Co.

Although the court properly rejected this evidence, it found as a fact that at all times relevant to this action S. Peirson was a partner with N. G. Neville, doing business as Peirson-Neville Co., and S. Peirson did business under the name of S. Peirson and Co., and these facts were known to Bland, who submitted the application for insurance. In other words, the court found from evidence it rejected that S. Peirson and Co. was not a partnership.

The defendant contends that under Item I of the Declarations in the policy it is stated "the named insured is partnership," and that the policy under Insuring Agreements, III. Definition of Insured, states in plain and unambiguous words "This policy does not apply: . . . (b) to any partner, employee . . . or additional insured with respect to any automobile owned by him. . . ." Therefore, as the defendant argues, since S. Peirson was a partner in the named insured in the policy, and since the Ford Station Wagon was S. Peirson's individual property, and registered in his name, the Ford Station Wagon is excluded from the coverage of the policy.

The plaintiff contends that the provision in the policy relied upon by defendant is in conflict with the provisions under Insuring Agreements, Definition of Hazards, Division I - Premises - Operations - Automobiles, reading as follows: "The ownership, maintenance or use of the premises for the purpose of an automobile dealer, repair shop, service station, storage garage or public parking place, and all operations necessary or incidental thereto; and the ownership, maintenance or use of any automobile in connection with the above defined operations, and the occasional use for other business purposes and the use for non-business purposes of (1) any automobile owned by or in charge of the named insured and used principally in the above defined operations, and (2) any automobile owned by the named insured in connection with the above defined operations for the use of the named insured, a partner therein, an executive officer thereof, or a member of the household of any such person." Therefore, as the plaintiff argues, these provisions being in conflict are ambiguous, and the policy must be construed liberally in respect to the persons insured and strictly with respect to the insurance company.

This action is brought under coverage C of the policy, which provides for medical payments not to exceed $2,000.00 incurred within one year from the date of accident for bodily injury, "caused by accident, while in or upon, entering or alighting from any automobile

which is being used by the named insured. . . . if insurance for such use is afforded under coverage A." Coverage A is for bodily injury "caused by accident and arising out of the hazards hereinafter defined." Insuring Agreements, Definition of Hazards, Division I, of the policy is quoted in the paragraph above, and provides coverage for "the ownership, maintenance or use of any automobile in connection with the above defined operations, and the occasional use for other business purposes and the use for non-business purposes of (1) any automobile owned by or in charge of the named insured and used principally in the above defined operations." In respect to the use of the Ford Station Wagon there is no finding of fact by the court, except the finding that the Ford Station Wagon "was not being operated for business connected with any such partnership." Plaintiff did not except to this finding of fact. Reading the court's findings of fact contextually, this finding would seem to refer to the operation of the automobile at the time Mrs. Peirson was injured. However that may be, the court made no clear and definite finding of fact that this automobile was, or was not, used principally in the operations set forth in Insuring Agreements, Definition of Hazards, Division I of the policy. The court was in error in excluding the testimony of S. Peirson and John H. Bland tending to show that the Ford Station Wagon was used principally in the business of S. Peirson and Co.

The court has made no findings of fact sufficient to determine as to whether or not the operation of the Ford Station Wagon at the time Mrs. Peirson was injured is covered by the provisions of Insuring Agreements, Definition of Hazards, Division I - Premises - Operations - Automobiles. If the court had made findings of fact and a conclusion of law favorable to plaintiff in this respect, then would be presented for decision the question as to whether the provisions of the policy under Insuring Agreements, III. Definition of Insured, which states "This policy does not apply: . . .(b) to any partner, employee . . . or additional insured with respect to any automobile owned by him . . ." when considered in connection with the provisions of Insuring Agreements, Definition of Hazards, Division I - Premises - Operations - Automobiles, creates, or does not create, an ambiguity in the language of the policy. If the court had made findings of fact and a conclusion of law unfavorable to plaintiff in this respect, then would be presented the question as to whether or not the plaintiff had any protection under the provisions of the policy.

Plaintiff's exception to the judgment presents the question as to whether the facts found support the judgment. *Best v. Garris,* 211 N.C. 305, 190 S.E. 221. In our opinion, the facts found by the court are insuffi-

cient to support its judgment, and the action is remanded to the Superior Court of Halifax County for further hearing.

Remanded.

BOBBITT, J., concurring in result: I concur in the *immediate result* of the decision, namely, that the case be remanded for explicit findings of fact as to whether the Ford station wagon was used principally in the business operations of S. Peirson & Co. Otherwise, my views differ from those expressed in the Court's opinion.

The action is by S. Peirson, an individual. He asserts no right as partner in Peirson-Neville Co. or as partner in S. Peirson & Co. Nor does he seek to alter or reform the policy. The sole basis for his claim is that S. Peirson & Co. is not a partnership, but a business of which he is sole owner; and that the Ford station wagon was used *principally* in the business of S. Peirson & Co. but *occasionally* for non-business purposes.

My view is that the policy was intended to cover automobiles owned by and used principally in the business of S. Peirson & Co., and that this coverage is not affected by the fact that S. Peirson & Co. was erroneously described as a partnership. The *controlling intent,* as I see it, was to provide coverage for S. Peirson & Co. Whether such business was a sole proprietorship, partnership or corporation was incidental.

If S. Peirson & Co. had been described as a sole proprietorship when in fact it was a partnership, involving a greater number of persons, perhaps an argument might be made that the erroneous description was material to the risk; but when described as a partnership when in fact it was a sole proprietorship it would seem that the risk would be less, certainly no greater, than that contemplated by the insurer.

I cannot agree that a policy issued to provide coverage for both Peirson-Neville Co. and S. Peirson & Co. should be held to provide coverage only for Peirson-Neville Co. solely because S. Peirson & Co. was erroneously described as a partnership rather than as a sole proprietorship.

Denny and Rodman, JJ., concur in concurring opinion.