Reversed and Rendered and Opinion filed January 29, 2004















Reversed and
Rendered and Opinion filed January 29, 2004.

 

 

In The

 

Fourteenth Court
of Appeals

____________

 

NO. 14-02-01251-CV

____________

 

CU LLOYD’S OF TEXAS, Appellant

 

V.

 

JASON HATFIELD, GRACE HATFIELD, BENJAMIN F. MAY D/B/A MAY’S
YOUNGLANDIA, AND GARY PAUL MAY, Appellees

 

________________________________________________________________

 

On Appeal from the 239th District
Court

Brazoria County, Texas

Trial Court
Cause No. 9950*JG99-1

 

________________________________________________________________

 

O P I N I O
N

            In this
insurance-coverage case, we confront an issue of apparent first impression under
Texas law: If an individual obtains an
insurance policy under which the named insured is that individual doing
business under another name, does a policy provision excluding coverage for
automobiles owned by the named insured exclude coverage as to an automobile
owned by that individual in his own name? 
Because we conclude that such a provision does exclude coverage
under these circumstances, we reverse the trial court’s summary judgment and
render judgment that appellant CU Lloyd’s of Texas has no obligation to defend
or indemnify appellees Jason Hatfield, Grace
Hatfield, Benjamin F. May d/b/a May’s Younglandia,
and Gary Paul May (collectively, the “Declaratory Judgment Defendants”) against
the claims asserted in the underlying suit. 


I.  Factual
and Procedural Background

            Gary
Paul May was driving on a highway near Angleton, Texas, in August of 1995, when
he came upon an eighteen-wheel truck traveling in his lane at what he perceived
to be a very slow speed.  May swerved in
a belated attempt to avoid hitting the truck. 
The passenger side of his vehicle struck the truck’s trailer, resulting
in serious injuries to Jason Hatfield, a passenger in May’s vehicle.  The vehicle May was driving was titled in the
name of his father, Benjamin F. May, Jr. 
At the time of the accident, Benjamin May, Jr. did business under the
name of “May’s Younglandia,” a sole proprietorship.

            CU Lloyd’s had issued an insurance
policy that provided commercial general liability coverage (the “CGL Policy”)
for Benjamin F. May, Jr.’s business.  This policy lists the named insured as:

May’s Younglandia

Benjamin F. May[1] DBA

 

            Jason Hatfield and his mother, Grace
Hatfield, filed suit against Gary May and
Benjamin F. May, Jr., individually, and d/b/a May’s Younglandia.  The Mays requested defense and indemnity from
CU Lloyd’s under the CGL Policy. 
Although another insurer’s automobile insurance policy covering the
vehicle provided defense and indemnity up to its limits, CU Lloyd’s denied coverage
under the CGL Policy.[2]  After a one-day bench trial, the court
rendered judgment for Jason Hatfield[3] against
all of the defendants jointly and severally in the sum of $996,000.  The trial court found that Gary May drove
negligently in the course and scope of his employment with May’s Younglandia at the time of the accident.  The trial court also held Benjamin F. May,
Jr. d/b/a May’s Younglandia liable both under the
doctrine of respondeat superior and under Jason
Hatfield’s negligent-entrustment claim.  

            CU Lloyd’s then filed a petition for
declaratory judgment in Harris County against
the Declaratory Judgment Defendants seeking an interpretation of coverage under
the CGL Policy.  Jason Hatfield, in turn,
filed suit in Brazoria County against CU
Lloyd’s.[4]  The declaratory-judgment action was
transferred to Brazoria County, and the
two cases were consolidated.  

            CU Lloyd’s moved for summary
judgment, alleging it had no duty to defend or indemnify because the named
insured owned the automobile involved in the accident, and the CGL Policy excludes
coverage for such casualties.  The
Declaratory Judgment Defendants moved for partial summary judgment on their
breach-of-contract claim, alleging (1) CU Lloyd’s was obligated under the CGL
Policy to provide a defense to May’s Younglandia and
the Mays against the claims in the underlying suit and (2) CU Lloyd’s had a
duty to indemnify for the $996,000 judgment awarded to Jason Hatfield.  The trial court denied CU Lloyd’s motion for
summary judgment and granted the Declaratory Judgment Defendants’ motion for
partial summary judgment.  The trial
court severed the breach-of-contract claim and granted final judgment against
CU Lloyd’s in the amount of $996,000, in addition to court costs, interest, and
attorney’s fees.  CU Lloyd’s objected to
the amount of the award because it exceeded the $500,000 policy limit.  The trial court rejected this argument.  CU Lloyd’s now appeals the trial court’s
final judgment.

II.  Issues Presented

            CU Lloyd’s presents the following
issues for appellate review:

            1.         Did
the trial court err in granting the Declaratory Judgment Defendants’ motion for
summary judgment? 

            2.         Did
the trial court err in denying CU Lloyd’s motion for summary judgment?

            3.         Did the trial court err in granting
judgment for $996,000 when the policy limit was $500,000?

III.  Standard of Review

            A summary-judgment movant must establish its right to summary judgment on the
issues presented to the trial court by conclusively proving all elements of the
movant’s claim or defense as a matter of law.  See
Tex. R. Civ.
P. 166a(c); Havlen v. McDougall, 22 S.W.3d 343, 345 (Tex.
2000).  When, as in this case, both
parties move for summary judgment, each party must carry its own burden, and
neither can prevail because of the failure of the other to discharge its
burden.  INAC Corp. v. Underwriters at Lloyd’s, 56 S.W.3d 242, 247 (Tex.
App.—Houston [14th
Dist.] 2001, no pet.).  Because CU
Lloyd’s and the Declaratory Judgment Defendants both moved for summary
judgment, the burden for each was the same: to establish entitlement to a
summary judgment by conclusively proving all the elements of the claim or
defense as a matter of law.  Id.  When both sides move for summary judgment and
the trial court grants one motion and denies the other, the appellate court
must review all summary-judgment evidence, determine all issues presented, and
render the judgment that the trial court should have rendered.  FM
Props. Operating Co. v. City of Austin, 22 S.W.3d
868, 872 (Tex. 2000).

            This court reviews the
summary-judgment evidence using familiar standards of review.  See Dolcefino v. Randolph, 19 S.W.3d 906, 916 (Tex. App.—Houston [14th
Dist.] 2000, pet. denied).  When a trial
court’s order granting summary judgment does not specify the grounds for the
ruling, we must affirm the summary judgment if any of the summary-judgment
grounds are meritorious.  FM Props. Operating Co., 22 S.W.3d at 872.

IV.  Analysis

            To resolve this insurance-coverage
dispute, we apply the rules of contract construction.  See
Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980
S.W.2d 462, 464 (Tex.
1998).  In applying these rules, our
primary concern is to ascertain the parties’ intent as expressed in the
language of the policy.  See id. 
In determining the intent of the parties, we examine only the language
of the insurance policy to see what is actually stated, rather than other
evidence of what was allegedly meant.  See Esquivel v. Murray Guard, Inc., 992
S.W.2d 536, 544 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).  We must consider all of the provisions with reference
to the entire contract; no single provision will be controlling.  Coker
v. Coker, 650 S.W.2d 391, 393 (Tex.
1983).  If a written contract is so
worded that it can be given a definite or certain legal meaning, then it is
unambiguous, and we may not consider parol evidence
as to the parties’ intent.  Kelley-Coppedge,
980 S.W.2d at 464.  Whether a contract is
ambiguous is a question of law.  Id.

            An insurer’s duty to defend is
determined by the allegations in the pleadings and the language of the insurance
policy.  Nat’l Union Fire Ins. Co. v. Merch. Fast
Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex.
1997).  This standard for determining the
duty to defend from the four corners of the pleading and the four corners of
the insurance policy is often referred to as the “eight corners” rule.  See id.  When we apply the “eight corners” rule, we
give the allegations in the petition a liberal interpretation.  Id.  If the pleading does not state facts
sufficient to bring the case clearly within or without the coverage, the
general rule is that the insurer is obligated to defend if potentially there is a case under the pleading within the coverage
of the policy.  See id.  Unlike a duty to
defend, the duty to indemnify arises from proven, adjudicated facts.  See
Trinity Universal Ins. Co. v. Cowan, 945
S.W.2d 819, 821 (Tex.
1997).  Thus, no duty to indemnify arises
unless the underlying litigation establishes liability for damages covered by
the insuring agreement of the policy.  See Comsys Info. Tech. Servs.,
Inc. v. Twin City Fire Ins. Co., No. 14-02-00241-CV, 2003 WL 22901017, *4,
—S.W.3d—,— (Tex. App.—Houston [14th Dist.] Dec. 4, 2003, no pet. h.).

 

Did CU Lloyd’s have a duty to indemnify for an accident involving an
auto owned by Benjamin F. May, Jr. when the named insured is a sole
proprietorship and coverage is excluded for autos owned by the insured? 

 

            CU Lloyd’s
contends it had no contractual duty to indemnify[5] under the
CGL Policy because the sole proprietorship, May’s Younglandia,
and its proprietor, Benjamin F. May, Jr. are legally the same person and, as a
consequence, an exclusion in the CGL Policy precludes coverage for the
accident.  

            The CGL Policy excludes coverage for
the following:

g.  “Bodily Injury” or “Property Damage” arising
out of the ownership, maintenance, use or entrustment to others of any
aircraft, “auto” or watercraft owned or operated by or rented or loaned to any
insured.  Use includes operation and
“loading or unloading.”  

            The
CGL Policy then lists several exceptions to this exclusion, namely:

            . .
.

            (6) A “non-owned auto” used in your
business by any person other than you.

The CGL
Policy defines “non-owned auto,” in pertinent part, as “any ‘auto’ you do not
own, lease, hire or borrow which is used in connection with your business.”  The definition of “you” under the CGL Policy
includes the named insured — Benjamin F. May d/b/a May’s Younglandia.  The Declaratory Judgment Defendants alleged
in their motion for summary judgment that there is coverage under the CGL
Policy because Gary May was
acting within the course and scope of his employment for May’s Younglandia and he was driving a vehicle not owned by May’s
Younglandia. 
The Declaratory Judgment Defendants argue that, as a result, the vehicle
falls under the “non-owned auto” exception to the exclusion in the CGL Policy.

            The Declaratory Judgment Defendants
ask this court to employ contract construction principles that favor the
insured.  See Grain Dealers Mut.
Ins. Co. v. McKee, 943 S.W.2d 455, 458 (Tex.
1997).  However, these special rules
favoring the insured are applicable only when there is an ambiguity in the
insurance policy.  See Puckett v. U.S. Fire Ins. Co., 678 S.W.2d 936, 938 (Tex.
1984).  Both CU Lloyd’s and the
Declaratory Judgment Defendants assert that the CGL Policy provisions at issue
are unambiguous, and we agree.  The cases
cited by the Declaratory Judgment Defendants in support of their contention
that special rules should apply involved situations in which the provisions in question
were found ambiguous.  See State
Farm Fire & Cas. Co. v. Reed, 873 S.W.2d 698,
699 n.3, 701 (Tex. 1993) (concluding exception to “business pursuits” exclusion
was ambiguous, but noting that “not every difference in the interpretation of a
contract or an insurance policy amounts to an ambiguity”); Commonwealth Lloyds Ins. Co. v. Downs, 853 S.W.2d 104, 110 (Tex.
App.—Fort Worth 1993, writ denied) (concluding word “hail” is susceptible to
more than one reasonable construction);
Glover v. Nat’l Ins. Underwriters, 545 S.W.2d 755, 761 (Tex. 1977)
(concluding pilot clause was ambiguous and could be construed in different
ways).  There is no ambiguity here.

            A contract is not ambiguous merely
because the parties advance conflicting contract interpretations.  See
Kelley-Coppedge, 980 S.W.2d at 465; Hall v. Auto-Owners Ins. Co., 658 N.W.2d
711, 717 (Neb. 2003) (concluding insurance policy not ambiguous because owner
of automobile is identical to named insured — Kenneth L. Gearhart dba Kennys Truck Repair).  The interpretation of an unambiguous contract
is a question of law for the court.  Edwards v. Lone Star Gas Co., 782 S.W.2d 840, 841 (Tex.
1990).  Because we conclude that the CGL
Policy provision in question is not ambiguous, we decline to employ rules that
apply to ambiguous contract provisions.[6] 

            The critical issue in this appeal is
whether Benjamin F. May, Jr. and May’s Younglandia
are one and the same for purposes of this CGL Policy.  A sole proprietorship is defined as “[a]
business in which one person owns all the assets, owes all the liabilities, and
operates in his or her personal capacity.” 
Black’s Law Dictionary
1398 (7th ed. 1999).  Under Texas law, a
sole proprietorship has no separate legal existence apart from the sole
proprietor.  See Ideal Lease Serv., Inc. v. Amoco Prod.
Co., Inc., 662 S.W.2d 951, 952 (Tex.
1983).  The majority of jurisdictions
reviewing situations similar to the one before this court have concluded that,
for insurance-coverage purposes, a sole proprietorship is not a legal entity
separate and distinct from the individual owner doing business in that
name.  See, e.g., Kelly v. Craig, 263 F. Supp. 570, 571 (W.D. Mo. 1967)
(stating that the named insured, Dorothy Craig DBA Ace Cab Co., was in fact and
in law the same entity as Dorothy M. Craig for purposes of automobile ownership
under insurance policy); Providence Wash.
Ins. Co. v. Valley Forge Ins. Co., 50 Cal. Rptr.
2d 192, 194–95 (Cal. Ct. App. 1996) (concluding that sole proprietorship had no
existence apart from owner for purposes of CGL policy with similar exclusion); Allstate Ins. Co. v. Willison,
885 P.2d 342, 344 (Colo. Ct. App. 1994) (holding vehicle was not “non-owned” as
described under insurance-policy exception because appellee
owned vehicle using sole proprietorship’s name); Hall, 658 N.W.2d at 716 (concluding named insured “Kenneth L.
Gearhart dba Kennys Truck
Repair” was not legal entity separate and distinct from the owner of
automobile); Recalde
v. ITT Hartford, 492 S.E.2d 435, 438 (Va. 1997) (holding sole
proprietorship is not legal entity separate and distinct from owner for purpose
of scope of coverage for injury or property damage under CGL policy).  Following the reasoning in these cases, we
conclude that the “named insured” here — “May’s Younglandia,
Benjamin F. May DBA” — is not a separate and distinct entity from the owner of
the automobile in question — Benjamin F. May, Jr.  Consequently, the CGL Policy did not provide
coverage for Jason Hatfield’s injuries because the automobile was owned by the
named insured.

            In support of their contention that
a distinction exists between business use and individual use under this
exclusion in the CGL Policy, the Declaratory Judgment Defendants cite a New
Mexico Court of Appeals case which disagrees with the majority rule from other
jurisdictions.  See Hertz Corp. v. Ashbaugh, 607 P.2d
1173 (N.M. Ct. App. 1980).  The New
Mexico Court of Appeals upheld the trial court’s decision that an auto
liability policy issued to “Tilman H. Ashbaugh dba Corky’s
Wrecker Service” covering temporary substitute autos “not owned by the named
insured” covered an auto owned by Ashbaugh
individually.  See id. at 1174–76.  In doing
so, the Ashbaugh
court, focusing on the intent of the parties, reasoned that “named insured” was
ambiguous and could be construed to mean the sole proprietorship only and not a
reference to the individual proprietor.  See id. at 1176.  We do not find this logic persuasive.  Many courts have criticized the New Mexico
Court of Appeals, and we find their criticism compelling for the same reasons.  See,
e.g., Recalde, 492 S.E.2d at 438 (finding Ashbaugh
unpersuasive because the court relied on a case involving insurance issued to
partnership, not sole proprietorship); Providence
Wash. Ins. Co., 50 Cal. Rptr. 2d at 196 (stating
same criticism and adding that Ashbaugh is inattentive to force of principle that trade
name does not create separate entity).  

            In addition to the New
 Mexico case, the Declaratory Judgment
Defendants offer several arguments as to why a sole proprietorship should be
treated differently from an individual. 
They contend that by treating a sole proprietorship and its sole
proprietor as one and the same for purposes of this Policy, (1) CU Lloyd’s is
saying May’s Younglandia owned the vehicle driven by
Gary May at the time of the accident; (2) the non-owned auto exception in the
CGL Policy is rendered meaningless; and (3) sole proprietorships will be
unjustly penalized by a finding that no legal distinction exists between a sole
proprietorship and the individual.  We
find these arguments to be without merit. 


            First, CU Lloyd’s is not arguing
that May’s Younglandia owned the vehicle driven by Gary May.  Rather, CU Lloyd’s contends, and this court
agrees, that May’s Younglandia and Benjamin F. May
are not separate and distinct entities. 
It is undisputed that Benjamin May, Jr. is the owner of the vehicle
involved in the accident.  Because
Benjamin May, Jr. is not separate and distinct from the “named insured,” May’s Younglandia, the vehicle is not a “non-owned auto,” and
this exception to the exclusion does not apply. 
The exception in the CGL Policy is not rendered meaningless by this
conclusion.  Assuming the requirements
are satisfied, non-owned autos are covered when used in connection with the
business.  For example, if Gary May
borrowed a friend’s car to conduct business for May’s Younglandia
and was in an accident, the “non-owned auto” exception would apply.  Finally, sole proprietorships are not
unjustly penalized by this holding.  A
business owner has many options when it comes to selecting a legal structure
for the operation of the business, for example as a sole proprietorship,
general partnership, limited liability partnership, corporation, or limited
liability company.  Each form has certain
benefits and detriments for business owners to weigh before deciding how to
structure the business.  If an owner
chooses to do business as a sole proprietorship, the owner should not be
surprised that the law treats the owner and the business as one and the same
person.  See Ideal Lease Serv., Inc., 662 S.W.2d
at 952.

            Because we conclude the exclusion in
the CGL Policy applies and thus precludes coverage of the judgment in the
underlying suit, we need not address the remaining issues raised by CU Lloyd’s.


V.  Conclusion

            We hold that May’s Younglandia, a sole proprietorship, and its proprietor,
Benjamin F. May, Jr., are one and the same for purposes of the CGL Policy.  Consequently, the coverage exclusion in the
CGL Policy for vehicles owned by the named insured applies.  Thus, CU Lloyd’s had no duty to defend or
indemnify Benjamin F. May d/b/a May’s Younglandia
against the Hatfields’ claims.  Accordingly, we sustain CU Lloyd’s first and
second issues.  We reverse the trial
court’s judgment, and we render the following judgment: (1) the Declaratory Judgment
Defendants take nothing on their breach-of-contract claim against CU Lloyd’s;
(2) the CGL Policy does not provide coverage for the claims asserted against
Benjamin F. May, Jr., individually and d/b/a May’s Younglandia
and Gary Paul May in the underlying suit; and (3) CU Lloyd’s has no obligation
to defend or indemnify the Declaratory Judgment Defendants regarding the
underlying suit. 

 

                                                                        /s/        Kem Thompson Frost

                                                                                    Justice

 

Judgment
rendered and Opinion filed January
 29, 2004.

Panel
consists of Justices Yates, Hudson, and Frost.

 











            [1]  Although the Declaratory Judgment Defendants’
appellate brief notes that Benjamin F. May is not the same person as Benjamin
F. May, Jr., stating that the former is the father of the latter, the Declaratory
Judgment Defendants do not contend that Benjamin F. May, Jr.’s
father was the person listed as the insured under the insurance policy.  





            [2]  CU Lloyd’s cited at first its contention that
Gary May was
not in the course and scope of his employment with May’s Younglandia
at the time of the accident and then later based its denial on an exclusion for
liability arising out of the ownership, use, or entrustment to others of cars
owned by the insured. 





            [3]  According to the trial court’s final
judgment, Grace Hatfield’s claims were dismissed before trial.





            [4]  Though the record does not contain a document
regarding assignment of rights, both parties indicate in their appellate briefs
that Benjamin F. May, Jr., individually and d/b/a May’s Younglandia,
and Gary Paul May assigned their rights against CU Lloyd’s to Jason Hatfield.





            [5]  The Declaratory Judgment Defendants devote a
substantial portion of their analysis to a discussion of the “eight corners”
rule in response to CU Lloyd’s argument on this point.  They seem to suggest that this rule is used
to determine whether coverage exists. 
The “eight corners” rule, however, applies to a duty to defend, not a
duty to indemnify.  See Merch. Fast Motor Lines, Inc., 939
S.W.2d at 141.  The duty to defend and
the duty to indemnify are distinct and separate duties.  Cowan,
945 S.W.2d at 821–22.  The Declaratory
Judgment Defendants presented no evidence of any alleged damages resulting from
CU Lloyd’s failure to defend the Mays in the underlying suit, and the trial
court did not award any such damages in its judgment.  Therefore, the only duty-to-defend issue
before this court is CU Lloyd’s argument that the trial court should have
granted a declaratory judgment as a matter of law that CU Lloyd’s had no duty
to defend.  The petition in the
underlying suit clearly alleged that Benjamin F. May, Jr. owned the vehicle
driven by Gary May.  Therefore, we conclude that, even under the
“eight corners” rule, CU Lloyd’s had no duty to defend.  See
Pennsylvania Pulp & Paper Co., Inc. v. Nationwide Mut.
Ins. Co., 100 S.W.3d 566, 570–75 (Tex. App.—Houston [14th
Dist.] 2003, pet. denied) (finding no duty to defend).  





            [6]  The Declaratory Judgment Defendants also
raise a recent First Court of Appeals case in support of their contention that
this court must consider the objectively reasonable expectations of the insured
with respect to coverage.  See Bituminous Cas.
Corp. v. Maxey, 110 S.W.3d 203 (Tex. App.—Houston [1st
Dist.] 2003, pet. denied).  They argue
they had a reasonable expectation that the CGL Policy would cover the vehicle
titled to Benjamin F. May, Jr. under the “non-owned auto” exception.  Texas cases
state that courts should give effect to the intent of the parties as expressed
in the unambiguous language of the insurance policy.  See Lenape
Res. Corp. v. Tennessee Gas Pipeline Co., 925 S.W.2d 565, 573 (Tex.
1996).  After stating this basic
principle, the Bituminous court also
mentioned the reasonable expectations of the parties, citing a California case.  See
Bituminous, 110 S.W.3d at 208–14 (citing California Cas. Ins. Co. v. Northland
Ins. Co., 56 Cal. Rptr. 2d 434, 444 (Cal. Ct. App. 1996)).  However, the Bituminous court only gave effect to the reasonable expectations of
the parties by enforcing the plain language of the insurance policy.  See id.
at 214.  To the extent the Declaratory
Judgment Defendants argue that the parties’ reasonable expectations should be
enforced in another way, this argument is not supported by the Bituminous case or other Texas
cases.  See id.; Esquivel, 992
S.W.2d at 544.